## Coleman's Petition.    Coleman's Appeal.

*Register of wills—Correction of record—Act of June 17, 1839—Jurisdiction—Practice, C. P.*

Under the act of June 17, 1839, P. L. 678, making it the duty of the judges of the courts of common pleas to ascertain whether the records of the register of wills have been properly kept, a petition for the performance of the duty is not necessary. The judge must ascertain by an inspection of the records whether they are kept as the law contemplates.

The power of supervision conferred by the act is limited to the work of the register in keeping and preserving the records, books, indexes and files of his office. It does not extend to his judicial acts and decisions.

Where a paper purporting to be a certified and true copy of a will duly probated in a foreign country has been accurately recorded by the register of wills, and letters testamentary issued thereon, the court of common pleas has no jurisdiction to correct the record on the ground that by reason of the translation and retranslation of the paper, a number of errors had crept into the copy.

Argued Jan. 16, 1894. Appeal, No. 67, Jan. T., 1894, by Rosalie Parant Coleman et al., from decree of C. P. No. 1, Phila. Co., June T., 1893, No. 339, in the matter of the will of Robert Coleman, deceased. Before Sterrett, C. J., Green, McCollum, Mitchell and Thompson, JJ. Reversed.

Petition for correction of records of register of wills.

The petition of the widow and heirs of George Dawson Coleman set forth:

That George Dawson Coleman died in Paris, October, 1891, leaving no children; that he was the only son of Robert Coleman, a citizen of Pennsylvania, who died in Paris, 1878, leaving surviving a widow, Rosalie Parant Coleman.

That on Sept. 2, 1878, the register of wills was requested by Horace Brock to issue a commission to Paris, France, to examine witnesses to prove the will of said Robert Coleman, deceased, in the custody of the proper legal authorities of Paris. On Sept. 4, 1878, the register issued said commission. The commission was returned executed on Sept. 18, 1878.

It therein appeared that the original olographic will of Robert Coleman had been deposited among the archives of one Joseph Lavoignat, a notary, in Paris; that the original will was produced at the execution of the commission, and the signature of Robert Coleman thereto was duly proved by the testimony of four witnesses.

It also appeared that the said will, in custodia legis, could not be removed and withdrawn under the law of France. Attached to the commission was a true copy of said will, now on file among the records of said register; but said copy has not been transcribed and entered in the books of the register.

In August or September, 1878, and prior to Sept. 20, 1878, there was presented to the register a translation of the last will of Robert Coleman, deceased, so deposited with notary Lavoignat. This was not a copy of the original, but an English

translation of a French translation of the original will in English.

By reason of the translation and retranslation, a number of errors have crept into the copy, so that the paper presented to the register on Sept. 19, 1878, was quite different from the original.

That letters testamentary on the estate of Robert Coleman, deceased, were issued by the register of wills to Horace Brock, on Sept. 19, 1878, upon a certified copy of the will, which it was claimed was duly proved in Paris, France, Aug. 9, 1878.

That the retranslation of the translation of said will only has been transcribed in the office of said register, and that the true copy attached to the commission was not recorded; that the transcription should have been corrected so as to correspond with the original.

That by the will of Robert Coleman, deceased, petitioners charge there was devised to George Dawson Coleman an estate in fee in the real estate, and there was bequeathed to him an absolute interest in the personalty, and it is of importance to petitioners that the record of the will of said Robert Coleman should be true and correct, as shown by the copy attached to the commission.   That said transcription in said will-book is incorrect, and calculated to cloud the title to said real estate.

That on April 13, 1893, petitioner made application to William G. Shields, Esq., register of wills, praying him to correct the errors and omissions appearing in said transcription, but he refused to comply.

Petitioners are advised that by the resolution of the legislature approved June 17, 1839, the judges of the courts of common pleas, if neglect on the part of any register of wills, etc., be apparent, may order the deficiency to be corrected; that this case is a case of manifest neglect.

The prayer was for the amendment of the transcription of the will of Robert Coleman.

The register filed an answer in which he averred that owing to the lapse of fifteen years he did not feel it proper to question the matter of the authentication as shown by the record.

Order made in accordance with prayer of petition.

*Error assigned* was above order.

*F. Carroll Brewster*, for appellant.—The provisions of the act of 1839 do not include an amendment of the record, such as is prayed for by petitioners. They contemplate only a correction of clerical errors, or where the officer has failed to record a paper, to supply his neglect, by ordering it to be transcribed: Armstrong v. Hallowell, 35 Pa. 485.

The probate of a will is a judicial act. The orphans' court could have reviewed the register's action upon an appeal. The act relied upon by appellees has no application to the present case, and the action of the court was void for want of jurisdiction.

The decree of the register is conclusive : Acts of March 15, 1832, § 31, P. L. 144 ; April 22, 1856, P. L. 533 ; Carpenter v. Cameron, 7 Watts, 51 ; Loy v. Kennedy, 1 W. & S. 396 ; Holliday v. Ward, 19 Pa. 485 ; Wilson v. Gaston, 92 Pa. 207 ; McCort's Ap., 98 Pa. 33 ; Cochran v. Young, 104 Pa. 333 ; McCay v. Clayton, 119 Pa. 133 ; Shoenberger's Est., 139 Pa. 132 ; Wells's Est., 46 Leg. Int. 476.

*John G. Johnson, John W. Brock* with him, for a contingent remainderman, intervening.—The act of June 17, 1839, was meant to give general supervisory power to the court of common pleas in the matter of examining whether the books, records, indexes, etc., were kept and maintained in the manner required by law, not to confer jurisdiction to order specific corrections in particular cases : Acts of March 29, 1827, 9 Sm. L. 319 ; April 19, 1856, P. L. 532.

The act of the register of wills in recording the copy of the will complained of and in granting letters testamentary thereon amounted to a probate of said will and to the performance of a judicial duty. For error in his action in such respect there was no remedy but by an appeal to a register's court : Holliday v. Ward, 19 Pa. 490; Loy v. Kennedy, 1 W. & S. 398; Logan v. Watt, 5 S. & R. 214.

*R. L. Ashhurst* and *Rowland Evans*, for appellees.—The court had jurisdiction to make the order correcting the record: Com. v. Bunn, 71 Pa. 405 ; Com. v. Cochran, 5 Binn. 87 ; Com. v. Com'rs, 37 Pa. 279 ; Moses on Mand. 49 ; Taylor v. Com., 103 Pa. 97 ; McDonald's Est., 130 Pa. 480 ; Dubreuil's Will, 8

Phila. 596; Bowlby v. Thunder, 105 Pa. 178; Wall v. Wall, 123 Pa. 545; Torrance v. Torrance, 53 Pa. 505.

OPINION BY MR. JUSTICE McCOLLUM, Oct. 1, 1894:

This is an appeal from an order of the court of common pleas commanding the register of wills of Philadelphia county to alter a record made on the 19th of September, 1878, by one of his predecessors in office.

The first contention of the appellant is that the order was not authorized by the statute relied on by the appellees to sustain it. By this statute it is made the duty of the judges of the courts of common pleas of the several counties of the commonwealth as often as the register of wills of any county shall be superseded, and as much oftener as shall be requisite, to ascertain if the records, books, indexes and files of his office be kept and left as the law contemplates, and, if neglect is apparent, to direct the deficiency to be performed by the proper officers. How is the duty thus imposed to be discharged, and what is the scope of it?

There is nothing in the statute which suggests the necessity or propriety of the institution of proceedings by interested parties and the formation of issues for the settlement of disputes between them. It is obviously a duty which may be performed by inspection. A petition for the performance of it is not required, nor a suggestion of inaccuracy in the record. No provision is made by the statute for bringing parties or witnesses into court or for the ascertainment of any fact by the production of testimony. It seems therefore that the judge charged with the duty in question, is required to ascertain by an inspection of the records, books and papers of the office whether they are kept as the law contemplates. Apparent neglect in keeping them may be readily discovered by inspection, and it is the most satisfactory if not the only method of discharging the duty imposed by the statute.

But the form of the proceeding in this case is not so objectionable as the purpose of it. A petition for the performance of the duty will not necessarily invalidate an order within the purview of the statute and proper to be made on inspection alone. The real and controlling question therefore is whether there is any statutory warrant for the order under review. The appel-

lees contend there is, and that it is to be found in the act of June 17, 1839. We have already referred to this act and the duty it enjoins. It undoubtedly gives the judges of the courts of common pleas supervisory power over certain work to be performed by the register. It requires them as often as he is superseded, "and as much oftener as shall be requisite," to ascertain if the records, books and papers of his office are kept in conformity with law, and if neglect is apparent, to direct the performance of the deficiency occasioned by it. But the power of supervision thus conferred is limited to the work of the register in keeping and preserving the records, books, indexes and files of his office. It does not extend to his judicial acts and decisions. From these an appeal lies to the orphans' court. Admitting a will to probate is a judicial act. Recording it and issuing letters testamentary thereon are acts which naturally follow its admission to probate and constitute prima facie evidence of it.

In the case before us it appears that an instrument purporting to be a certified and true copy of the will of Robert Coleman which was claimed to have been duly probated in Paris, France, was presented to the register of wills of Philadelphia county, Pa., who accurately recorded the same and issued letters testamentary thereon. He recorded it as the law required him to record "all original wills, after probate, and the copies of all original wills produced under the provisions" of the act of March 15, 1832. Fifteen years after recording it and issuing letters testamentary, during which time the record so made was regarded as authorized and authentic, this proceeding was instituted to change it. We regard the proceeding as unprecedented and founded upon a misapprehension of the true scope and meaning of the act of 1839. It follows from the views expressed that the order complained of was improvidently made.

We do not deem it necessary or advisable at this time to discuss or consider the other questions raised in this case. All that we now decide is that the order of June 17, 1893, is null because the learned judge of the court below was not authorized to make it.

Order reversed and set aside.